**BENDAU & BENDAU PLLC**
Clifford P. Bendau, II (030204)
Christopher J. Bendau (032981)
P.O. Box 97066
Phoenix, Arizona 85060
Telephone: (480) 382-5176
Facsimile: (480) 304-3805
Email: cliffordbendau@bendaulaw.com
chris@bendaulaw.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| **Matthew Harris**,<br><br>Plaintiff,<br><br>vs.<br><br>**Harkins Administrative Services, Inc.**, an Arizona corporation, and **Daniel E. Harkins and Jane Doe Harkins**, a married couple,<br><br>Defendants. | No.<br><br>**VERIFIED COMPLAINT** |

Plaintiff, Matthew Harris ("Plaintiff" or "Matthew Harris"), sues the Defendants, Harkins Administrative Services, Inc., and Daniel E. Harkins and Jane Doe Harkins (collectively, "Defendants" or "Harkins Theatres") and alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for unpaid minimum wages, liquidated damages, attorneys' fees, costs, and interest under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq.; unpaid minimum wages under the Arizona Minimum Wage Act ("AMWA"), Arizona Revised Statutes ("A.R.S.") Title 23, Chapter 2, Article 8; and

unpaid wages under the Arizona Wage Act ("AWA"), A.R.S. Title 23, Chapter 2, Article 7.

2. The FLSA was enacted "to protect all covered workers from substandard wages and oppressive working hours." Barrentine v. Ark Best Freight Sys. Inc., 450 U.S. 728, 739 (1981). Under the FLSA, employers must pay all non-exempt employees a minimum wage of pay for all time spent working during their regular 40-hour workweeks. See 29 U.S.C. § 206(a). Under the FLSA, employers must pay all non-exempt employees an overtime ate of pay for all time spent working in excess of 40 hours in a given workweek. See 29 U.S.C. § 207(a).

3. The AMWA, A.R.S § 23-363, et seq., establishes a minimum wage within the State of Arizona.

4. The AWA, A.R.S. § 23-350, et seq., establishes standards for wage payments to employees within the State of Arizona.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq*. because this civil action arises under the Constitution and law of the United States. This Court also has subject matter jurisdiction pursuant 28 U.S.C. § 1367 because the state law claims asserted herein are so related to claims in this action over which this Court has subject matter jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) because acts giving rise to the claims of Plaintiff occurred within the District of Arizona, and

Defendants regularly conduct business in and have engaged in the wrongful conduct alleged herein – and, thus, are subject to personal jurisdiction in – this judicial district.

**PARTIES**

7. At all times material to the matters alleged in this Complaint, Plaintiff was an individual residing in Maricopa County, Arizona, and is a former employee of Defendants.

8. At all material times, Defendant Harkins Administrative Services, Inc. is a corporation duly licensed to transact business in the State of Arizona. At all material times, Defendant Harkins Administrative Services, Inc. does business, has offices, and/or maintains agents for the transaction of its customary business in Maricopa County, Arizona.

9. At all relevant times, Defendant Harkins Administrative Services, Inc. owned and operated as "Harkins Theatres," an enterprise doing business in Pima County, Arizona that provides call center services for third-party companies.

10. Under the FLSA, Defendant Harkins Administrative Services, Inc. is an employer. The FLSA defines "employer" as any person who acts directly or indirectly in the interest of an employer in relation to an employee. At all relevant times, Harkins Administrative Services, Inc. had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiff's employment with Defendants. As a person who acted in the interest of Defendants in

relation to Harkins Theatres' employees, Defendant Harkins Administrative Services, Inc. is subject to liability under the FLSA.

11. On information and belief, Defendants Daniel E. Harkins and Jane Doe Harkins are, upon information and belief, husband and wife. On information and belief, they have caused events to take place giving rise to the claims in this Complaint as to which their marital community is fully liable. On information and belief, Defendants Daniel E. Harkins and Jane Doe Harkins are owners of Harkins Theatres and were at all relevant times Plaintiff's employers as defined by the FLSA, 29 U.S.C. § 203(d).

12. On information and belief, under the FLSA, Defendants Daniel E. Harkins and Jane Doe Harkins are employers. The FLSA defines "employer" as any person who acts directly or indirectly in the interest of an employer in relation to an employee. On information and belief, at all relevant times, Defendants S Daniel E. Harkins and Jane Doe Harkins had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiff's employment with Defendants. On information and belief, as persons who acted in the interest of Defendants in relation to Harkins Theatres' employees, Defendants Daniel E. Harkins and Jane Doe Harkins are subject to individual liability under the FLSA.

13. Plaintiff is further informed, believes, and therefore alleges that each of the Defendants herein gave consent to, ratified, and authorized the acts of all other Defendants, as alleged herein.

14. Defendants, and each of them, are sued in both their individual and corporate capacities.

15. Defendants are jointly and severally liable for the injuries and damages sustained by Plaintiff.

16. At all relevant times, Plaintiff was an "employee" of Defendants as defined by the FLSA, 29 U.S.C. § 201, *et seq*.

17. The provisions set forth in the FLSA, 29 U.S.C. § 201, *et seq*., apply to Defendants.

18. At all relevant times, Defendants were and continue to be "employers" as defined by the FLSA, 29 U.S.C. § 201, *et seq*.

19. The provisions set forth in the A.R.S. Title 23, Articles 7 and 8 apply to Defendants.

20. At all relevant times, Plaintiff was an "employee" of Defendants as defined by A.R.S. § 23-362.

21. At all relevant times, Defendants were and continue to be "employers" of Plaintiff as defined by A.R.S. § 23-362.

22. Defendants individually and/or through an enterprise or agent, directed and exercised control over Plaintiff's work and wages at all relevant times.

23. On information and belief, Plaintiff, in his work for Defendants, was employed by an enterprise engaged in commerce that had annual gross sales of at least $500,000.

24. At all relevant times, Plaintiff, in his work for Defendants, was engaged in commerce or the production of goods for commerce.

25. At all relevant times, Plaintiff, in his work for Defendants, was engaged in interstate commerce.

26. Plaintiff, in his work for Defendant, regularly handled goods produced or transported in interstate commerce.

## **FACTUAL ALLEGATIONS**

27. Defendants own and/or operate as Harkins Theatres, an enterprise doing business in Maricopa County, Arizona.

28. Plaintiff was hired by and began working for Defendants on approximately October 31, 2022.

29. At all relevant times, Plaintiff's final shift working for Defendants was on or about August 2, 2023.

30. At all relevant times, in his work for Defendants, Plaintiff worked as a Team Member for Defendants, performing various non-exempt customer service-related tasks.

31. Defendants, in their sole discretion, paid Plaintiff an hourly rate of $14.10.

32. In Plaintiff's final workweek with Defendants, he worked approximately 12 hours.

33. Defendants never paid Plaintiff any wage whatsoever for the final workweek of his employment with them.

34. As a result of failing to pay Plaintiff any wages whatsoever for the final workweek he worked, Defendants failed to pay earned wages to Plaintiff for work he performed, despite having suffered or permitted Plaintiff to work such time.

35. As a result of failing to pay Plaintiff any wages whatsoever for the final workweek he worked, Defendants failed to pay the minimum wage to Plaintiff for such time worked.

36. Defendants classified Plaintiff as W-2 employee.

37. Defendants declined to pay Plaintiff for the work he performed in his final workweek with them.

38. Therefore, for the final workweek that Plaintiff worked for Defendants, Defendants paid Plaintiff no wages whatsoever.

39. Throughout Plaintiff's employment with Defendants, and at all relevant times, he was paid via direct deposit to his bank account on a biweekly frequency.

40. On August 2, 2023, Defendants terminated Plaintiff's employment.

41. Arizona Revised Statute § 23-353 states that, "[w]hen an employee is discharged from the service of an employer, he shall be paid wages due him within seven working days or the end of the next regular pay period, whichever is sooner."

42. Plaintiff's next regular payday was August 11, 2023.

43. Defendants did not pay Plaintiff for his final workweek on or before August 9, 2023.

44. Defendants did not pay Plaintiff for his final workweek on or before August 9, 2023, which was the latest Defendants could have paid Plaintiff and still be "within seven working days."

45. After not receiving his final paycheck, on August 14, 2023, Plaintiff emailed his home address to Defendants' payroll department in an effort to have Defendants mail his check to them.

46. On August 28, 2023, Plaintiff again emailed Defendants' payroll department to inquire about when he would receive his final paycheck, stating:

> I am still waiting to get paid my final pay from over 3 weeks ago. You have yet to respond to my email from 2 weeks ago giving you my address.
>
> I am expecting to get paid immediately.

47. In response, Defendants' payroll department stated the following:

> Hello Matthew,
>
> Your final pay was funded to your Dayforce Wallet card on 8/10/23. If you do not have the card, you can access your funds through the Wallet App. If you are having trouble logging in, you can call wallet customer service 1-877-723-7434. Please let me know if you have any questions.

48. In response, Plaintiff stated: "Please reference ars 23-353 section 3 which specifically states I am to be paid to a financial institution of my choice."

49. In response, Defendants' payroll department stated the following:

> Hello Matthew,
>
> On August 1, 2023, Harkins paid your final pay to your Dayforce Wallet, which is the payroll card account that you signed up for while you were employed with Harkins. That means your final pay has been in your possession since August 1, and Harkins no longer has access to it.

> If you still have your Dayforce Wallet Card, you can use it to withdraw your final pay at a financial institution of your choice. If you no longer have your card, you can use the Dayforce Wallet App to access your final pay and transfer it to a financial institution of your choice. If you are having trouble logging into the app, you can call Dayforce's customer service number at 1-877-723-7434.
>
> Please let me know if you have any questions.

50. However, Plaintiff never indicated that he wished to be paid via Harkins' Dayforce wallet card.

51. Indeed, Plaintiff, at the beginning of his employment stated that he wished to be paid via direct deposit at his bank, and he provided Defendants with his direct deposit banking information to that end.

52. Throughout Plaintiff's entire employment, Defendants paid him via direct deposit at the bank of his choice.

53. Defendants never issued a Dayforce wallet card to Plaintiff.

54. To date, Defendants have still paid no wages whatsoever to Plaintiff for such hours worked.

55. As a result of not having paid any wage whatsoever to Plaintiff during his final workweek with Defendants, Defendants failed to pay the applicable minimum wage to Plaintiff.

56. As a result of Defendants' failure to compensate Plaintiff any wage whatsoever for such hours worked, Defendants violated 29 U.S.C. § 206(a).

57. As a result of Defendants' failure to compensate Plaintiff any wage whatsoever for such hours worked, Defendants violated the AMWA, A.R.S. § 23-363.

58. As a result of Defendants' failure to compensate Plaintiff any wage whatsoever for such hours worked, Defendants violated the AWA, A.R.S., § 23-351.

59. Defendants refused and/or failed to properly disclose to or apprise Plaintiff of his rights under the FLSA.

60. At all relevant times, Plaintiff was a non-exempt employee.

61. Plaintiff is a covered employee within the meaning of the FLSA.

62. Defendants individually and/or through an enterprise or agent, directed and exercised control over Plaintiff's work and wages at all relevant times.

63. Due to Defendants' illegal wage practices, Plaintiff is entitled to recover from Defendants compensation for unpaid minimum wages, an additional amount equal amount as liquidated damages, interest, and reasonable attorney's fees and costs of this action under 29 U.S.C. § 216(b).

64. Due to Defendants' illegal wage practices, Plaintiff is entitled to recover from Defendants compensation for unpaid wages, an additional amount equal to twice the unpaid minimum wages as liquidated damages, interest, and reasonable attorney's fees and costs of this action under A.R.S § 23-363.

65. Due to Defendants' illegal wage practices, Plaintiff is entitled to recover from Defendants compensation for unpaid wages at an hourly rate, to be proven at trial, in an amount that is treble the amount of the unpaid wages, plus interest thereon, and costs incurred under A.R.S. § 23-355.

**COUNT ONE: FAIR LABOR STANDARDS ACT**
**FAILURE TO PAY MINIMUM WAGE**

66. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

67. As a result of not paying Plaintiff any wage whatsoever for the final workweek of his employment, Defendants failed or refused to pay Plaintiff the FLSA-mandated minimum wage.

68. Defendants' practice of failing or refusing to pay Plaintiff at the required minimum wage rate violated the FLSA, 29 U.S.C. § 206(a).

69. Plaintiff is therefore entitled to compensation for the full applicable minimum wage at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**WHEREFORE**, Plaintiff, Matthew Harris, respectfully requests that this Court grant the following relief in Plaintiff's favor, and against Defendants:

A. For the Court to declare and find that the Defendants violated minimum wage provisions of the FLSA, 29 U.S.C. § 206(a) by failing to pay proper minimum wages;

B. For the Court to award Plaintiff's unpaid minimum wage damages, to be determined at trial;

C. For the Court to award compensatory damages, including liquidated damages pursuant to 29 U.S.C. § 216(b), to be determined at trial;

D. For the Court to award prejudgment and post-judgment interest;

E. For the Court to award Plaintiff reasonable attorneys' fees and costs of the action pursuant to 29 U.S.C. § 216(b) and all other causes of action set forth herein;

F. Such other relief as this Court shall deem just and proper.

**COUNT TWO: ARIZONA MINIMUM WAGE ACT**
**FAILURE TO PAY MINIMUM WAGE**

70. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

71. As a result of not paying Plaintiff any wage whatsoever for the final workweek of his employment, Defendants failed or refused to pay Plaintiff the Arizona minimum wage.

72. Defendants' practice of failing or refusing to pay Plaintiff at the required minimum wage rate violated the AMWA, 23-363.

73. Plaintiff is therefore entitled to compensation for the full applicable minimum wage at an hourly rate, to be proven at trial, plus an additional amount equal to twice the underpaid wages as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**WHEREFORE**, Plaintiff, Matthew Harris, respectfully requests that this Court grant the following relief in Plaintiff's favor, and against Defendants:

A. For the Court to declare and find that the Defendants violated minimum wage provisions of the AMWA, A.R.S. § 23-363 by failing to pay proper minimum wages;

B. For the Court to award Plaintiff's unpaid minimum wage damages, to be determined at trial;

C. For the Court to award compensatory damages, including liquidated damages pursuant to A.R.S. § 23-364, to be determined at trial;

D. For the Court to award prejudgment and post-judgment interest;

E. For the Court to award Plaintiff reasonable attorneys' fees and costs of the action pursuant to A.R.S. § 23-364 and all other causes of action set forth herein;

F. Such other relief as this Court shall deem just and proper.

**COUNT THREE: ARIZONA WAGE ACT**
**FAILURE TO PAY WAGES DUE AND OWING**
**HARKINS ADMINISTRATIVE SERVICES, INC., ONLY**

74. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

75. As a result of the allegations contained herein, Defendant Harkins Administrative Services, Inc. did not compensate Plaintiff wages due and owing to him.

76. Defendant Harkins Administrative Services, Inc. engaged in such conduct in direct violation of A.R.S. § 23-350.

77. Defendant Harkins Administrative Services, Inc. acted unreasonably and in bad faith in failing to pay Plaintiff the wages due and owing him.

78. Defendant Harkins Administrative Services, Inc. sought to delay payment without reasonable justification and to defraud Plaintiff of wages earned.

79. As such, unpaid wages for such time Plaintiff worked are owed to Plaintiff for the entire time he was employed by Defendant Harkins Administrative Services, Inc.

80. Plaintiff is therefore entitled to compensation for unpaid wages at an hourly rate, to be proven at trial, in an amount that is treble the amount of the unpaid wages, plus interest thereon, and costs incurred.

**WHEREFORE**, Plaintiff, Matthew Harris, requests that this Court grant the following relief in Plaintiff's favor, and against Defendant Harkins Administrative Services, Inc.:

A. For the Court to declare and find that the Defendant Harkins Administrative Services, Inc. violated the unpaid wage provisions of A.R.S. § 23-350, et seq., by failing to pay wages due and owing to Plaintiff;

B. For the Court to award an amount that is treble Plaintiff's unpaid wages pursuant to A.R.S. § 23-355, in amounts to be determined at trial;

C. For the Court to award prejudgment and post-judgment interest on any damages awarded;

D. For the Court to award Plaintiff's reasonable attorneys' fees and costs of the action and all other causes of action set forth in this Complaint; and

E. Such other relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 13th day of November, 2023.

BENDAU & BENDAU PLLC

By: */s/ Clifford P. Bendau, II*
Clifford P. Bendau, II
Christopher J. Bendau
*Attorneys for Plaintiff*

**VERIFICATION**

Plaintiff, Matthew Harris, declares under penalty of perjury that he has read the foregoing Verified Complaint and is familiar with the contents thereof. The matters asserted therein are true and based on his personal knowledge, except as to those matters stated upon information and belief, and, as to those matters, he believes them to be true.

Matthew Harris (Nov 13, 2023 14:42 MST)

Matthew Harris